**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **DALI WIRELESS, INC.,**<br><br>                       Plaintiff,<br><br>v.<br><br>**CORNING, INC. and CORNING OPTICAL COMMUNICATIONS LLC,**<br><br>                       Defendant. | Civil Action No. 6:20-CV-01108-ADA<br><br>**JURY TRIAL DEMANDED** |

**CORNING, INC. AND CORNING OPTICAL COMMUNICATIONS LLC'S
OPPOSED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2
    A. Procedural History of Dali's Moving Target Litigation Approach ........................ 2
        1. *Dali I* (WDNC/NDCA): Dali Dropped and Added Patents, Dropped Accused Products, and the Case Was Transferred from WDNC to NDCA ................................................................................. 2
        2. *Dali II and III* (WDTX): Dali Filed a Case Without Standing to Do So, Dropped a Patent, Dropped Accused Products, Requested Dismissal of the First Case, and Filed a New Case .................................... 2
    B. The Parties Do Not Have Any Relevant Ties to This District ............................... 3
    C. Dali Has Litigated and Done Business in NDTX ................................................... 4

III. ARGUMENT ........................................................................................................................ 5
    A. Applicable Law ...................................................................................................... 5
    B. This Case Could Have Been Brought in NDTX ..................................................... 5
    C. The Private Interest Factors Heavily Favor Transfer to NDTX ............................. 6
        1. The Cost of Attendance for Willing Witnesses .......................................... 6
        2. The Relative Ease of Access to Sources of Proof ...................................... 8
        3. Availability of Compulsory Process ........................................................... 8
        4. Practical Problems for an Easy, Expeditious, and Inexpensive Case ......... 9
    D. The Public Interest Factors Favor Transfer .......................................................... 10

IV. CONCLUSION .................................................................................................................. 10

Pursuant to 28 U.S.C. § 1404(a), Defendants Corning, Inc. and Corning Optical Communications LLC (collectively, "Corning") hereby move to transfer this case to the Northern District of Texas ("NDTX").[1]

## I.      INTRODUCTION

This patent infringement case is substantially more convenient in NDTX than in the Western District of Texas ("WDTX"). None of Corning's relevant witnesses are located or documents generated in this District, nor has Dali alleged that its own witnesses are located or documents generated here. Corning's third-party suppliers that have relevant information regarding the accused features of Corning's Optical Network Evolution ("ONE") product are also located outside this District. In NDTX, however, Corning employs approximately 17 employees with technical or other relevant knowledge of the accused ONE product and has shipped the ONE product there.

When considered collectively, the private and public interest factors heavily favor transfer to NDTX: (1) neither Party has any relevant connection to this District; (2) NDTX also has a patent-savvy bench and at least one judge (Chief Judge Lynn) is very familiar with Dali, Distributed Antenna Systems ("DAS")—the accused technology in this case—and some of the relevant prior art; (3) Corning employs 17 employees with knowledge of the ONE product in NDTX; (4) many of the third-party and Dali witnesses will be traveling from outside of Texas, and traveling to the Dallas courthouse from the Dallas airport is more convenient than travelling to the Waco courthouse from either the Austin or Dallas airports; (5) NDTX is less congested than WDTX; and (6) Dali has taken a moving target approach in its litigation against Corning by,

---

[1] Pursuant to Local Rule 7(i), the Parties' counsel conferred and were unable to resolve this matter by agreement. Declaration of Caleb Bean ("Bean Decl."), ¶ 4. Corning's position is that NDTX is more convenient than WDTX, whereas Dali disagrees and opposes this motion. *Id.*

1

among other things, swapping out an entire set of asserted patents, dropping accused products, dropping a patent and accused products in this District, and allegedly correcting a chain of title issue and refiling in WDTX; all during the initial pleadings. In sum, NDTX is clearly a more convenient forum than WDTX, and Corning requests transfer to NDTX.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Procedural History of Dali's Moving Target Litigation Approach

#### 1.    *Dali I* (WDNC/NDCA): Dali Dropped and Added Patents, Dropped Accused Products, and the Case Was Transferred from WDNC to NDCA

On December 30, 2019, in the Western District of North Carolina ("WDNC"), Dali filed an original Complaint alleging that Corning's ONE products and SpiderCloud's Enterprise Radio Access Network ("E-RAN") System infringe two U.S. patents. *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 3:19-cv-00714, Dkt. 1 (W.D.N.C. Dec. 30, 2019). Dali then changed its strategy and filed a First Amended Complaint, which dropped the two patents from the original Complaint, added three new patents, and no longer accused Corning's ONE products. *Id.*, Dkt. 7. Thereafter, Corning filed a motion to transfer to the Northern District of California ("NDCA"), which the WDNC Court granted, and that case remains active there. *Id.*, Dkt. 23, 23-1, 29; *see Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 3:20-cv-06469 (N.D. Cal.) ("*Dali I*").

#### 2.    *Dali II and III* (WDTX): Dali Filed a Case Without Standing to Do So, Dropped a Patent, Dropped Accused Products, Requested Dismissal of the First Case, and Filed a New Case

After losing the motion to transfer, and despite the ongoing litigation in NDCA, Dali filed another patent infringement action against Corning in WDTX. Specifically, Dali alleged that Corning's ONE products and SpiderCloud E-RAN System infringe two U.S. patents, one of which was a patent previously dropped from *Dali I*. *Dali Wireless, Inc. v. Corning, Inc. et al.*, No. 6:20-cv-00827, Dkt. 1 (W.D. Tex. Sep. 9, 2020) ("*Dali II*"). Then, realizing that the case may be

transferred to NDCA because of the direct overlap of patent families and subject matter, Dali withdrew one of the patents in *Dali II*—the same patent it withdrew in *Dali I*—and dropped its accusations against the E-RAN System. *See id.*, Dkt. 19.

Months later, Dali recognized that it never had standing to sue on the remaining patent in *Dali II* because it did not own the patent. It thus asked this Court to dismiss *Dali II*, filed the above-captioned case, and asked the Court to enter the same scheduling order from *Dali II* in yet another case against Corning. *See id.*, Dkt. 25 at 2; *Dali Wireless, Inc. v. Corning, Inc. et al.*, No. 6:20-cv-01108 (W.D. Tex. Dec. 4, 2020) ("*Dali III*").

### B.    The Parties Do Not Have Any Relevant Ties to This District

Neither Corning nor Dali is a resident of WDTX. *See Dali III*, Dkt. 1 at ¶¶ 3, 5, 6. Corning, Inc. resides in New York and Corning Optical Communications LLC resides in North Carolina. *Id.*, ¶¶ 5, 6. Dali resides in Delaware. *Id.*, ¶ 3. Nor are the Parties' principal places of business in WDTX. Dali has taken inconsistent positions as to its principal place of business in a transparent attempt to avoid transfer: (1) alleging in *Dali I* that its principal place of business is Menlo Park, California; and (2) alleging in *Dali II* and *Dali III* that its "center of operations" is Burnaby, British Columbia, Canada. *See Dali I*, Dkt. 7, ¶ 3; *Dali II*, Dkt. 19, ¶ 3; *Dali III*, Dkt. 1, ¶ 3. Regardless of which of Dali's positions is correct, its principal place of business is unquestionably outside WDTX.

Most of Corning's relevant employees working on its ONE product are based in Israel or Keller, Texas, which is approximately 40 miles northeast of Dallas. Corning's employees who have primary responsibility for the accused ONE product are Christian Duran and Vinn Varghese, who are based in Corning's Keller office. Declaration of Christian Duran ("Duran Decl."), ¶ 4. Corning employs at least 17 employees in Keller who work on technology related to the ONE product, and a listing of those employees and their titles and/or responsibilities is in the attached

Duran Declaration. *Id.*, ¶ 4. The ONE product is primarily researched, designed, and developed in Israel with the relevant employees located and documents generated there. *See* Duran Decl., ¶ 5. In addition, the sales and marketing of the ONE product are primarily handled by employees in Corning's Charlotte, North Carolina and Keller, Texas offices. *Id.*, ¶¶ 4, 6.

Although Corning maintains an office in Austin, Texas and employs four employees involved with the ONE product, those employees do not have detailed technical knowledge of the accused features of the ONE product. *See id.*, ¶ 3. The work conducted by those employees primarily involves sales and marketing of Corning's entire wireless product set, and they do not have detailed technical knowledge of the ONE product. *Id.* Corning does not anticipate that any of its employees based in WDTX will serve as witnesses in this case, nor is Corning aware of any Dali witnesses located in WDTX. *See id.* Further, Dali appears to employ at least one sales personnel in Dallas. *See* Bean Decl., ¶ 2.

In addition, the third parties that supply components for the accused ONE product are located outside of WDTX. *See* Duran Decl., ¶ 7. Not only are the companies located elsewhere, so are their witnesses and documents. Thus, there are no relevant ties to WDTX.

### C.   Dali Has Litigated and Done Business in NDTX

In 2016, CommScope Technologies LLC ("CommScope") sued Dali in NDTX for patent infringement, and Dali counterclaimed for patent infringement. *See CommScope Techs. LLC v. Dali Wireless, Inc.*, No. 3:16-cv-00477, Dkt. 24, 87 (N.D. Tex. 2016). Dali admitted that it has done business in NDTX and that it offered to sell and sold DAS products in NDTX. *Id.*, Dkt. 87, ¶ 7. Moreover, in its case spanning over four years before Chief Judge Lynn of NDTX, Judge Lynn conducted a jury trial on June 4-19, 2019 relating to DAS technology and its value, and Dali was successful in its claims of patent infringement, netting almost $3.5 million. *Id.*, Dkt. 489. In addition, CommScope's FlexWave Prism products accused of infringement in that case are

4

relevant system prior art in Dali's case against Corning. Therefore, NDTX is familiar with (1) Dali's corporate representatives; (2) DAS technology; (3) valuation issues related to this technology; and (4) system prior art relevant to this case.

### III. ARGUMENT

#### A. Applicable Law

To evaluate a transfer motion under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

#### B. This Case Could Have Been Brought in NDTX

Under 28 U.S.C. § 1400(b), "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Under the second prong, a

5

"regular and established place of business" must be the following: "(1) a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Google LLC*, 949 F.3d 1338, 1340 (Fed. Cir. 2020).

Here, this case could have been brought in NDTX under the second prong. Although Corning denies having infringed the asserted patent, Corning admits that the accused ONE product has been shipped to cities within NDTX, and Corning has a physical presence in NDTX via its office in Keller, Texas. Duran Decl., ¶¶ 2, 4. Corning's Keller office is a regular and established place of business and where the employees primarily responsible for the ONE product are based. *Id.*, ¶ 4. Thus, this action could have been brought in NDTX.

### C. The Private Interest Factors Heavily Favor Transfer to NDTX

The private interest factors heavily favor transfer because (1) it is clearly more convenient for out-of-state witnesses and Corning's Keller-based witnesses to travel to the Dallas courthouse than the Waco courthouse; (2) Dali would not be prejudiced given its ever-changing litigation strategy; and (3) NDTX is familiar with Dali and the accused DAS technology at issue in this case.

#### 1. The Cost of Attendance for Willing Witnesses

This factor relates to the relative convenience of each forum to witnesses in the litigation, including costs in time and money. Here, this factor strongly favors transfer to NDTX.

*First*, neither Party has any relevant witnesses in WDTX, nor are there any non-party witnesses located here. Indeed, every relevant witness would need to travel from NDTX or outside of Texas. For example, Corning's employees who are primarily responsible for the ONE product and approximately 17 total employees with knowledge of the accused ONE product are based in Keller, Texas, and additional technical personnel familiar with the ONE product in Israel. *See* Duran Decl., ¶¶ 4, 5. The primary sales and marketing personnel for the ONE product are in North Carolina. *See id.*, ¶ 6. Moreover, third-party witnesses, such as engineers from Corning's suppliers

6

who are intimately familiar with the accused features of Corning's ONE product, are located outside of WDTX. *See id.*, ¶ 7.

In contrast, Dali alleges that Corning's operations in Austin, Texas are relevant to this case. *See* Dkt. 1, ¶¶ 7-9. They are not. There are four Corning employees based out of Corning's Austin office that have a general knowledge of the ONE product but lack detailed technical knowledge of the accused features of the ONE product and is therefore not relevant to this case. *See* Duran Decl., ¶ 3.

***Second***, having this case heard in NDTX benefits key witnesses that already reside there. The key employees who are primarily responsible for the ONE product include Christian Duran and Vinn Varghese, each of whom is based in Corning's Keller office. *Id.*, ¶ 4. Corning employs an additional 15 employees who work out of and live near the Keller Office and whose work involves the ONE product. *Id.*

***Third***, other potential witnesses would find NDTX more convenient to travel into, including third-party witnesses and Dali's own witnesses. Most of these witnesses will be flying into Texas from out of state. If this case were transferred to NDTX, they could fly into the Dallas/Fort Worth International Airport ("DFW") and travel the short distance (less than 9 miles) to the Dallas courthouse. If this case remains in WDTX, they would need to fly into DFW or Austin-Bergstrom International Airport and drive over 100 miles (over an hour) to the Waco courthouse. *See DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. 6:20-cv-00069, Dkt. 41, at 15-16 (W.D. Tex. June 16, 2020) (Albright, J.) ("Appearing in Waco after traveling from either Dallas or Houston would produce additional travel time and difficulty whereas traveling to and appearing in Houston would be significantly easier. As such, the Court finds that the ease of access to the inventors favors the SDTX."). Absent a transfer, this would result in additional travel

7

expense, decreased employee productivity, and increased disruption to the personal lives of these witnesses, their families, and their communities. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). *Volkswagen II*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Avoiding any added inconvenience to these witnesses heavily favors transfer. Thus, this most important factor strongly favors transfer.

### 2. The Relative Ease of Access to Sources of Proof

This factor relates to "the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 U.S. Dist. LEXIS 218449, at *34 (W.D. Tex. Apr. 5, 2017). Here, Corning primarily researches, designs, develops, and tests its ONE product in Israel and conducts additional testing in Keller, Texas. *See* Duran Decl., ¶ 5. The technical documents associated with the Corning ONE product, including source code and other technical documents, are also generated in Israel and Keller, and the relevant engineers are located there. *Id.*, ¶¶ 4, 5. Corning's related sales documents are in Keller and Charlotte, North Carolina. *Id.*, ¶¶ 4, 6. Corning's suppliers and their documents are primarily located in Israel. *Id.*, ¶ 7. In contrast, there is no indication that any relevant evidence is in WDTX. Although the Parties may agree to produce non-source code documents electronically, this does not fully mitigate the need to inspect source code and/or other highly sensitive documents in person. Thus, the relative ease of access to sources of proof slightly favors transfer.

### 3. Availability of Compulsory Process

This factor focuses on unwilling, non-party witnesses. Corning is not aware of any potential third-party witnesses in this District or in NDTX, nor has Dali identified any. Thus, this factor is neutral.

### 4. Practical Problems for an Easy, Expeditious, and Inexpensive Case

The final private factor considers all "other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. Courts weigh a number of case-specific factors in the § 1404(a) analysis but, "at the end of the day, judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *XY, LLC*, 2017 U.S. Dist. LEXIS 218449, at *35 (W.D. Tex. Apr. 5, 2017) (citation omitted); *see In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) ("[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of paramount consideration, . . . and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.") (internal quotations and citations omitted).

Judicial economy heavily favors transfer to NDTX. Dali only recently filed its case on December 4, 2020, and because this case is in its very early stages, no practical problems exist that would upset the transfer of this case to NDTX. *See* Dkt. 1; *Transunion Intelligence LLC v. Search Am., Inc.*, 2011 U.S. Dist. LEXIS 36750, at *15 (E.D. Tex. Apr. 5, 2011). Chief Judge Lynn, a sophisticated, patent-savvy judge, has presided over a patent infringement action between Dali and CommScope involving DAS technology from February 2016 until May 2020. *See CommScope Techs. LLC v. Dali Wireless, Inc.*, No. 3:16-cv-00477 (N.D. Tex. 2016). During that time, Chief Judge Lynn became very familiar with DAS technology, the same technology at issue here, and presided over the case through a jury trial. *See id.* Further, Dali cannot argue that transfer to NDTX is somehow prejudicial; Dali was successful in its case against CommScope with net winnings of approximately $3.5 million. *Id.*, Dkt. 489. Thus, judicial economy heavily favors transfer.

Dali's moving target litigation strategy and lack of any coherent approach undermines Dali's choice of forum and heavily favors transfer. In *Dali I*, Dali asserted two patents against two

9

products. *See* Section II.A.1-2, *supra*. It then dropped those patents and added three entirely new patents and dropped its infringement allegations against Corning's ONE product. *Id. Dali I* was then transferred to NDCA, so Dali filed a second case against Corning, *Dali II*, in WDTX. *Id.* In that case, like *Dali I*, Dali asserted two patents against the same two products. *Id.* This time, Dali dropped one of the patents and one of the accused products. *Id.* Then, because it never had standing to file *Dali II*, Dali filed a third suit against Corning and asked the Court to dismiss *Dali II*. *Id.* One thing is clear from Dali's cases: it lacks a coherent strategy and constantly changes the target. Corning's request is simple: transfer venue under § 1404(a) to NDTX, a more convenient forum whose court is familiar with Dali and well-versed in the DAS technology at issue.

In sum, the private interest factors heavily favor transfer to NDTX.

### D. The Public Interest Factors Favor Transfer

The administrative difficulties flowing from court congestion favor transfer. When compared with WDTX, NDTX is not congested. If transferred to NDTX, the case would be assigned to one of three patent judges in the Dallas Division as part of a pilot project for the efficient and effective management of patent cases. *See* Miscellaneous Order No. 62 (NDTX). Each of these patent judges has approximately one-third to one-half the number of cases on their dockets as compared to this Court:

| Judge | Number of Open Cases (as of 12/29/20) |
|---|---|
| Alan Albright (WDTX) | 825 |
| Barbara Lynn (NDTX) | 263 |
| David Godbey (NDTX) | 296 |
| James Kinkeade (NDTX) | 8,459 (138) |

*See* Bean Decl., ¶ 3 (explaining J. Kinkeade's caseload). Thus, this factor heavily favors transfer.

The remaining public interest factors are neutral.

### IV. CONCLUSION

Corning requests that the Court transfer this case to NDTX under § 1404(a).

10

Dated: December 30, 2020					Respectfully submitted,

							By: */s/ Michael J. Newton*
							Michael J. Newton (TX Bar No. 24003844)
							**ALSTON & BIRD LLP**
							Chase Tower
							2200 Ross Avenue, Suite 2300
							Dallas, TX 75201-2748
							Phone: (214) 922-3423
							Fax: (214) 922-3899
							mike.newton@alston.com

							Ross R. Barton (NC Bar No. 37179)
							**ALSTON & BIRD LLP**
							101 South Tyron Street, Suite 4000
							Charlotte, North Carolina, 28280
							Phone: (704) 444-1287
							Fax:    (704) 444-1111
							ross.barton@alston.com


							*Attorneys for Corning, Inc. and Corning Optical Communications LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on December 30, 2020.

*/s/ Michael J. Newton*